JOHN POWERS *et al.* Appellants, *vs.* SARAH C. WELLS, Appellee.

*Opinion filed April 21, 1910.*

1. WILLS—*when widow does not take the fee.* Under a will devising to the testator's wife the residue of his estate, "to be used and disposed of during her life the same as I might do if living, giving my said wife full power to sell, exchange, invest and re-invest the same as I might do if living," and giving her power to distribute the estate among the children by gift or by will, but devising any estate remaining undisposed of at her death to the children then living and the issue of any deceased child, the widow takes a life estate and the remainder vests in the children, subject to being divested by the exercise of the widow's powers. (*Wolfer v. Hemmer,* 144 Ill. 554, distinguished.)

2. LEASES—*when widow's lease does not extend beyond her lifetime.* Under a will devising the residue of the testator's estate to his widow, "to be used and disposed of during her life," and giving her power to sell, exchange, invest and re-invest and to distribute the property among the children by gift or by will, and devising to the children any property undisposed of at the widow's death, the widow has no power or authority to encumber the property, by lease or other encumbrance, beyond the termination of the life tenancy.

3. ESTOPPEL—*what is an essential element of an equitable estoppel.* It is an essential element of an equitable estoppel that the person asserting such estoppel shall have done or omitted some act or changed his position in reliance upon the representations or conduct of the person against whom such estoppel is asserted.

APPEAL from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

Anson S. Piper died testate on June 21, 1886, leaving surviving him Julia E. Piper, his widow, and seven children, appellee, Sarah C. Wells, being one of said children. The third paragraph of his will, which will was duly admitted to probate, is as follows:

"*Third*—I give, devise and bequeath to my said wife, Julia, all my remaining estate, both real and personal, to

be used and disposed of during her life the same as I might do if living, giving my said wife full power to sell, exchange, invest and re-invest the same as I might do if living, and to distribute the same by gift among my children at any time during her life as to her shall seem meet and proper, and to appoint the same among my said children by last will according to her discretion. But if any of my estate shall remain undisposed of at the time of her death, I give, devise and bequeath all such residue and remainder of my said estate to be equally divided among my children who shall be living at that time and the issue of any child who may have then deceased, such issue taking the share to which such deceased child would be entitled if living."

At the time of his death Anson S. Piper was the owner of the north half of the north-west quarter of section 20 and the east half of the north-east quarter of section 19, township 37, north, range 13, east of the third principal meridian, in Cook county, Illinois. Julia E. Piper was the owner, in her own right, of a tract of land in the east half of the south-east quarter of section 18, in the same township and range. The main line of the Wabash railroad crosses section 18 diagonally, entering it near the south-west corner and passing out a little south of the north-east corner. On December 30, 1899, Julia E. Piper executed to appellants John Powers and William J. O'Brien a written lease on the eighty-acre tract of land in section 20 for one year, at an annual rental of $1200. The lease granted an option to the lessees of a further term of three years beginning January 1, 1902, at an annual rental of $2000 during that period, and a further option to lease said premises for a period of five years beginning January 1, 1905, at a rental of $2500 per annum. By the terms of said lease the lessor also granted to the lessees, free of expense, such ground as might be necessary for a railroad depot and platform, and also a right of way sixty-six feet in width

for switch tracks upon and across said section 18, in order to enable the lessees to connect the leased premises in section 20 with the main line of the Wabash railroad. On the termination of the lease all buildings or improvements erected on the premises by the lessees were to become the property of the lessor. It was provided that in the event the lessees were prevented from constructing and operating the switch tracks connecting the demised premises with the main line of the Wabash railroad, then the lease to be null and void, at the option of the lessees. On ,the 26th day of May, 1900, by a separate agreement, the lessor granted to the lessees the right or option of a further lease on the eighty-acre tract in section 20 for a period of ten years from the first of January, 1910, at an annual rental of $2500. For some time prior to the execution of the lease there had been a race track on the demised premises in section 20, and after the lessees entered into possession of said land they erected a grand-stand and other improvements and conducted a race course thereon. Switches were constructed from the main line of the Wabash railroad in section 18 to connect with the race course grounds in section 20, and a track was laid for this purpose over the north-east corner of section 19, which, it will be observed, was not included in the premises demised in the lease for right of way or for any other purpose.

Julia E. Piper died April 23, 1901. On April 30, 1901, all the heirs of Anson S. and Julia E. Piper, deceased, conveyed by warranty deed to William J. O'Brien "all that part of the north-east quarter of section 19, town 37, north, range 13, east of the third principal meridian, in the town of Worth, Cook county, Illinois, lying south of Morgan avenue and north of the switch tracks of the Wabash Railroad Company." On the 14th day of July, 1904, the brothers and sisters of Sarah C. Wells, being all the heirs of Anson S. and Julia E. Piper, conveyed to her by quit-claim deed "the north four acres of the north six acres of

the east fifteen acres (except that part conveyed to William J. O'Brien) * * * of the north-east quarter of the north-east quarter of section 19, township 37, north, range 13, east of the third principal meridian, situated in the county of Cook, in the State of Illinois." It was on this four-acre tract of land in section 19 that the switch had been constructed, and after a demand to remove the same, Sarah C. Wells brought an action of ejectment against the Wabash Railroad Company. Thereupon, on December 9, 1905, the appellants, John Powers, William J. O'Brien and the Worth Jockey Club, filed their bill, praying that said Sarah C. Wells be enjoined from prosecuting her ejectment suit and that the lease from Julia E. Piper be reformed so as to include in the description a right of way over the four-acre tract in section 19. It is alleged in the bill that at the time of the execution of the lease by Julia E. Piper, as above set out, it was the intention of all the parties to said lease to include in the grant the right of way for switch tracks over the north-east quarter of the north-east quarter of said section 19 but by inadvertence of ·the scrivener it was omitted. It is further alleged that after the execution of the lease, the lessees therein, with the consent, approval and direction of Julia E. Piper, licensed the Wabash Railroad Company to build and operate a switch track from the main line of its road over said sections 18 and 19, including said four-acre tract and up to section 20, and that said tracks were built and laid, so far as the location thereof was concerned, under the personal supervision and direction of said Julia E. Piper. The heirs of Anson S. and Julia E. Piper were made defendants to the bill.

Sarah C. Wells answered the bill, denying all the material allegations thereof, and also filed a cross-bill, in which she alleged the death of her father, Anson S. Piper, and set out his will in full. It is alleged in the cross-bill that said Julia E. Piper, during her lifetime, did not sell or ex-

change the east half of the north-east quarter of said section 19, and did not distribute it, or any part of it, by gift among the children of said Anson S. Piper, deceased; that in order to partition a portion of the estate of said Anson S. Piper his other heirs conveyed to cross-complainant the four-acre tract of land above described and other land. It is alleged that by virtue of the lease set up in the original bill William J. O'Brien and John Powers claimed some right or interest in said tract of land, and that through said parties the Wabash Railroad Company also claimed some interest in said land and had built a switch track across the same. Said parties are made defendants to the cross-bill, and the prayer is that they be decreed to have no right, title or interest in or to said property and that they be ordered to vacate the same and remove said switch tracks therefrom. Answers and replication were filed and the cause was referred to a master in chancery to take the proof and report his conclusions of law and fact. Subsequent to the reference to the master the complainants in the original bill, by leave of court, filed a supplemental bill, in which it was alleged that since the filing of the original bill the heirs-at-law of Anson S. Piper, deceased, had conveyed their interest in the leases described in said bill to the Cook County Horse and Cattle Company. Said company was made a defendant to the bill and answered the same, admitting that all the heirs of Anson S. Piper, deceased, with the exception of Willie B. Piper, had conveyed their interest in the leases as alleged in the supplemental bill. Willie B. Piper answered by his conservator, alleging he was feeble-minded and praying the protection of the court. After hearing the testimony the master reported that the complainants in the original and supplemental bills were entitled to a decree for the reformation of the lease, giving them the right of way for switch tracks across appellee's land in section 19 and to an injunction as prayed in the original bill. The chancellor sustained exceptions to

the master's report and entered a decree dissolving the injunction, dismissing the original bill and granting the relief prayed in the cross-bill. This appeal is prosecuted by complainants in the original bill to review that decree.

FRANK H. GRAHAM, for appellants:

The construction of the will depends upon the intention of the testator, which is to be ascertained from a careful study of everything in the will, giving just weight and operation to each clause and word employed. *Dickison* v. *Dickison*, 138 Ill. 544; *Taubenhan* v. *Dunz*, 125 id. 529.

The intention must be determined from the language of the whole will, and no construction should be adopted which does violence to the language of any provision, so long as the different provisions can be harmonized and construed together. *Rickner* v. *Kessler*, 138 Ill. 636.

More comprehensive language to confer an unlimited discretionary power could not be commanded than was used by the testator in this will. *Wolfer* v. *Hemmer*, 144 Ill. 554; *Hamlin* v. *Express Co.* 107 id. 443; *In re Cashman*, 134 id. 88; *Markillie* v. *Ragland*, 77 id. 102; *Henderson* v. *Blackburn*, 104 id. 227.

"To dispose of" includes the power to lease. *Hill* v. *Sumner*, 132 U. S. 118; *Phelps* v. *Harris*, 101 id. 370; *United States* v. *Greichot*, 14 Pet. 537.

"To dispose" means "to alienate or direct the ownership of property." "Alienation" means to transfer property from one person to another. At the common law alienation may be by conveyance, lease, etc. Original conveyances are grants, leases, etc. Bouvier's Law Dict.; *Dickson* v. *Biscuit Co.* 211 Ill. 480.

The appellee having knowledge of the laying and maintenance of the tracks in question during the lifetime of Julia E. Piper, and the acceptance by appellee of the rents under the lease since the death of Julia E. Piper, and the written assignment by the appellee of the leases in question,

since the death of Julia E. Piper, to the Cook County Horse and Cattle Company, is estopped by such acts and doings from claiming the lease to be invalid, and such acts and doings amount to a recognition of the rights of the complainant and the ratification of the leases in question. *Hyde Park* v. *Borden,* 94 Ill. 26; *O'Neal* v. *Auten,* 58 id. 148; *Humphreys* v. *Allen,* 101 id. 490.

PADDOCK, FURNESS, CLARKSON & RUTTER, and WILLIAM ELIOT FURNESS, for appellee:

Under the will of Anson S. Piper, Julia E. Piper had only a life estate in the lands devised in clause 3 of the will. As a life tenant she had power to lease during her term, but no power to lease or to give options under the additional powers given her in said clause. Hurd's Stat. chap. 30, sec. 13; *Bergan* v. *Cahill,* 55 Ill. 160; *Welsch* v. *Bank,* 94 id. 191; *Henderson* v. *Blackburn,* 104 id. 227; *Bradley* v. *Westcott,* 13 Ves. 445; *Smith* v. *Bill,* 6 Pet. 68; *Boyd* v. *Strahan,* 36 Ill. 355; *Siegwald* v. *Siegwald,* 37 id. 430; *Mulberry* v. *Mulberry,* 50 id. 67; *Giles* v. *Little,* 104 U. S. 291; *Hamlin* v. *Express Co.* 107 Ill. 445; *Kaufman* v. *Breckinridge,* 117 id. 305; *Walker* v. *Pritchard,* 121 id. 221; *Giles* v. *Anslow,* 128 id. 187; *In re Cashman,* 134 id. 90; *Ducker* v. *Burnham,* 146 id. 9; *Thomas* v. *Miller,* 161 id. 60; *Skinner* v. *McDowell,* 169 id. 365; *Mann* v. *Martin,* 172 id. 18; *Saeger* v. *Bode,* 181 id. 514; *Lambe* v. *Drayton,* 182 id. 110; *Bowerman* v. *Sessel,* 191 id. 651; *Fitzpatrick* v. *Fitzpatrick,* 197 id. 144; *Griffiths* v. *Griffiths,* 198 id. 632; *Metzen* v. *Schopp,* 202 id. 275; *Gruenewald* v. *Neu,* 215 id. 132; *Sayer* v. *Humphreys,* 216 id. 426; Lewin on Trusts, (1st Am. ed.) *425; *Waldron* v. *Chasteney,* 2 Blatchf. 32; *Seymour* v. *Bull,* 5 Day, 388; *Dean* v. *Adler,* 30 Md. 147; *In re Hesdras Estate,* 20 N. Y. Sup. 79; *Rutherford* v. *Sanntlock,* 60 N. J. Eq. 470; *Atwater* v. *Perkins,* 51 Conn. 188; *Hunt* v. *Hunt,* 11 Nev. 442.

The appellee is in no way estopped by any knowledge she may have had of the laying and maintenance of the tracks during the life of Julia E. Piper, or by acceptance of rents under the leases after death of said Julia E. Piper, or the assignment of such leases to the Cook County Horse and Cattle Company. *Hefner* v. *Vandolah,* 57 Ill. 520; *Shields* v. *Atkins,* 3 Atk. 562; *Guthmann* v. *Velling,* 51 Neb. 824; *Kenney* v. *Sweeney,* 14 R. I. 581; *Ramsdell* v. *Maxwell,* 32 Mich. 285.

Mr. Chief Justice Farmer delivered the opinion of the court:

As in the view we take of this case its determination depends upon a construction of the third paragraph of the will of Anson S. Piper without reference to the oral testimony in the case, it will not be necessary to pass upon the competency of appellants Powers and O'Brien as witnesses, to the discussion of which a portion of the briefs of both parties is devoted.

The land in controversy is a part of section 19 and was disposed of by Anson S. Piper in the third paragraph of his will, which is quoted in full in the preceding statement. By the first clause of said paragraph the testator devised to his wife, Julia E. Piper, the remainder of his estate, real and personal, which included the land in section 19, "to be used and disposed of during her life the same as I might do if living." Following this language power was conferred upon Mrs. Piper, who was also appointed executrix of the will, to sell, exchange, invest and re-invest the property; also power to distribute it by gift among the testator's children during her life, and the further power to dispose of it by will among them according to her discretion. If any of the estate remained undisposed of at the death of Mrs. Piper the will directed it to be equally divided among the testator's children, and their issue if any were dead, such issue taking the share the deceased child would have

been entitled to if living. The chancellor construed this paragraph of the will to give Mrs. Piper a life estate, with certain powers to sell, exchange, invest and re-invest and to distribute by gift among the testator's children during her life or to appoint the same among them by will, and held that Mrs. Piper had no power to execute leases extending beyond the period of her lifetime; that the leases and options executed by Mrs. Piper were co-extensive only with her life estate and upon her death became invalid, except, at most, from year to year, and could not be reformed or extended to cover the land in section 19.

Appellants contend that the language of the first clause of paragraph 3, authorizing Mrs. Piper to use and dispose of the property during her life the same as the testator might have done if living, confers power upon her to do anything that the testator himself could have done during his life, and as he would have had the power to make the leases and options, it follows that Mrs. Piper had the same power. We cannot agree to this construction, as it seems clearly and palpably contrary to the intention of the testator when all the language of paragraph 3 of his will is considered. If the effect of paragraph 3 was to give his widow the same interest in and power over the property he had while living, it would have given her the fee. Such clearly was not his intention and it is not so contended by appellants. Immediately following the estate devised to the widow, the testator in clear and explicit terms conferred power upon her to sell or exchange the property and invest and re-invest it or distribute it among his children during her life or by will at her death, and if any of the estate remained undisposed of by the widow under these powers, his will directed that it should go to his children and their issue. Under said paragraph 3 Mrs. Piper took a life estate, with power to sell, exchange, invest, re-invest, etc. This did not raise her estate to a fee, and the remainder vested in the children of the testator, subject to be divested

by the exercise of the powers conferred upon Mrs. Piper by the will. *Ducker* v. *Burnham,* 146 Ill. 9.

In *Hamlin* v. *United States Express Co.* 107 Ill. 443, the will under consideration gave to the testator's widow all his estate, real and personal, after the payment of his debts, "for her own use and benefit, with full power to hold, use, enjoy or dispose of the same in any manner she may choose, and if she so desires she shall have full power and authority to convey any and all of my real estate by absolute conveyance in fee simple." The will further provided that at the death of the widow, if any of the estate remained undisposed of by her, it should be sold and the proceeds distributed according to directions given in the will. The court said (p. 449) : "The language of this will is such as to leave no rational doubt that it was intended the wife of the testator should take a life estate with power of disposing of and conveying the fee, and that the specific legatees should take the remainder. The wife is given everything, with full power to use, enjoy and dispose of the same and convey the real estate by absolute conveyance in fee simple. This, if unqualified, would, of course, vest a fee simple in the real estate; but being qualified, in order to give the language of the qualification any effect this language must be restricted to the life of the wife of the testator. It is contemplated there will be real estate which shall not have been sold by the wife in her lifetime, and this is to be sold, not for the benefit of the wife's estate, but for the benefit of the estate of testator and the proceeds divided among other designated objects of his bounty."

In *Skinner* v. *McDowell,* 169 Ill. 365, the will under consideration gave the testator's wife the residue of his estate, "to be sold, retained and exchanged, used and managed by her as she may think proper during her life; and in case anything may be left after her death, it is my desire that she shall make some arrangement to have it equally divided among our children," naming them. The court

held the widow took a life estate, only, with power to sell, and said (p. 369): "True, the life tenant is given the right to sell, retain, exchange, use and manage it 'as she may think proper,' but under the decisions of this State her title is not thereby enlarged into a fee. The rule is well established by our decisions that a life estate may be created with power to dispose of the fee and limit a remainder after the termination of the life estate. The power of absolute disposition annexed to a life estate does not enlarge it into an estate in fee."

*Wolfer* v. *Hemmer,* 144 Ill. 554, relied on by appellants, is not in conflict with the cases above cited and does not sustain appellants' contention. In that case the first paragraph of the will of John Hemmer gave his wife, "her heirs and assigns," certain real estate, without any qualifications or limitations whatever. The second paragraph gave his wife a life estate in all the remaining property of the testator, real and personal. Said second paragraph is almost in the identical language of paragraph 3 in the will here under consideration, and gives the same powers to sell, exchange, invest and re-invest, distribute and appoint the property by will, that is given in the third paragraph of the Anson S. Piper will. A controversy arose between persons who were heirs of both John Hemmer and his wife and persons who were heirs only of the wife, as to whether she took the fee in the property devised by the first paragraph of the will or whether that paragraph was limited by the second so that she took only a life estate. It was held as to the property devised by the first paragraph the widow took an estate in fee simple, and that this was not limited or qualified by the second paragraph.

In construing wills the intention of the testator should be ascertained from the consideration of the entire will and effect be given to that intention. The rule was well expressed in *Hamlin* v. *United States Express Co. supra,* in the following language: "The intention of the testator, if

not inconsistent with the rules of law, shall govern, and this intention is to be ascertained from the whole will and all its parts taken together. Every clause and provision, if possible, should have effect given to it according to the intention of the maker." The construction placed upon paragraph 3 of the will under consideration by the chancellor is in harmony with the requirements of this rule and gives effect to the intention of the testator without violating any rule of law.

Mrs. Piper took no power or authority under the words giving her the right to use and dispose of the property during her life except such power as is incident to a life tenancy, and a life tenant has no authority to encumber the property, by lease or other encumbrance, beyond the termination of the life tenancy. (*Hoyt* v. *Jacques,* 129 Mass. 286; *Seymour* v. *Bull,* 5 Day, (Conn.) 388; *Dean* v. *Adler,* 30 Md. 147; Perry on Trusts,—5th ed.—sec. 769; 31 Cyc. 1080, 1081.) The words "to be used and disposed of during her life" mean no more than that Mrs. Piper should have the use, control and management of the property so long as she lived. There is no intimation in the will that if she exercised the power of sale the proceeds should be hers to dispose of absolutely and for her own use and benefit. The power of sale was limited to the purpose of investment and re-investment or distribution of the proceeds, and this power could only be exercised for the purpose pointed out in the will conferring the power. As a life tenant Mrs. Piper had no power to make any disposition of the land that would interfere with the rights of the remainder-men after her death. Her right to sell was by virtue of having been made donee of that power by other provisions of the will following those giving her a life estate in the premises.

We think there is no merit in the contention of appellants that appellee is by her acts and conduct subsequent to the death of the life tenant estopped to deny appellants'

right to the use of the property under the leases. She has not by any act or by her silence induced appellants to do anything or take any position to their prejudice. It is an essential element of an equitable estoppel that the person asserting it shall have done or omitted some act or changed his position in reliance upon the representations or conduct of the person sought to be estopped. *Knoebel* v. *Kircher*, 33 Ill. 308; *Smith* v. *Newton*, 38 id. 230; *Hefner* v. *Vandolah*, 57 id. 520; *Gillespie* v. *Gillespie*, 159 id. 84.

In our opinion the decree of the chancellor in dismissing the bill and granting the relief prayed in the cross-bill was correct, and that decree is affirmed.

*Decree affirmed.*