(No. 13189.—Reversed and remanded.)

LOUIS C. DePROFT vs. E. J. HEYDECKER et al.—(LOUIS
   C. DePROFT et al. Appellees, vs. GEORGE W. CAMERON
   et al. Appellants.)

*Opinion filed April 21, 1921—Rehearing denied June 8, 1921.*

1. CLOUD ON TITLE—*what proof necessary to sustain grant of swamp lands.* The determination by the Secretary of the Interior that certain land is swamp and overflowed land is conclusive, but in the absence of such determination one obtaining a deed from a county for alleged swamp and overflowed land must, in order to sustain his title, prove by witnesses having personal knowledge of the facts that the greater part of the legal subdivision containing the tract conveyed is swamp and overflowed land and unfit for cultivation.

2. SAME—*when running of seven year limitation is arrested.* Color of title, possession and payment of taxes must concur before the seven years Statute of Limitations begins to run, and in a suit by the claimant to quiet title the filing of a cross-bill for partition by the holder of the paramount title will arrest the running of the statute unless the full seven years has intervened between the first payment of taxes and the filing of the cross-bill.

3. SAME—*title of heirs is not affected by administrator's personal contract to convey.* The title of heirs is not affected by an administrator's personal contract to convey estate property to a person to whom the deceased had agreed to convey it by a contract which was never carried out by either party, even though the land was taken possession of and improved pursuant to said contract and although the party taking possession performed his part of the agreement with the administrator, where there is no evidence that the heirs authorized or ratified the administrator's contract or received any benefit therefrom.

4. ESTOPPEL—*before equitable estoppel arises there must be reliance upon conduct of persons sought to be estopped.* It is an essential element of an equitable estoppel that the person asserting it shall have done or omitted some act or changed his position in reliance upon the representations or conduct of the persons sought to be estopped.

5. LACHES—*when laches will bar action within period of limitation.* Mere delay for any period short of the Statute of Limitations will not bar an action to assert title to land, and it is only

when the delay is accompanied by some act done or permitted, some change of relations or conditions, or some other element rendering it inequitable to permit the owner to assert title, that *laches* will bar his right within the statutory period.

APPEAL from the Circuit Court of Lake county; the Hon. CLAIRE C. EDWARDS, Judge, presiding.

COOKE, POPE & POPE, for appellants.

CHENEY & EVANS, PAUL MACGUFFIN, and ALBERT PETERSON, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

Louis C. DeProft filed a bill in the circuit court of Lake county to quiet his title to a certain tract of land lying between Nippersink and Fox Lakes, the title of which was originally in William H. Cameron, and to compel the heirs of Cameron to convey the legal title to the complainant. Some of the heirs filed cross-bills for the partition of the lands, praying that certain instruments be set aside as clouds on their title. The bill was amended and a supplemental bill was filed, the cause was heard on the issues made by the pleadings and the evidence, a decree was rendered granting the relief prayed for by the complainant and dismissing the cross-bill. George W. Cameron and Simeon O. Cameron, two of the heirs of William H. Cameron, who were defendants to the original bill and complainants in the cross-bill, have appealed.

It appears from the evidence that in 1899 Joel N. Hastings made a contract for the exchange of the property in controversy, called the Lakeside Hotel property, for two lots which Hastings owned in Chicago; that Hastings immediately went into possession of the land and commenced to improve it; that he erected a windmill, a bungalow and a cottage, built fences around it except where it was bounded by the water, did some tiling and planted trees, all at a

total cost of $3500. These improvements were made in 1899 and 1900. In April, 1900, Cameron died without having conveyed the property to Hastings, neither had Hastings conveyed the Chicago lots to Cameron. Cameron left a widow and five sons, one of whom was a minor and did not become of age until 1904. William J. Cameron, one of the sons, was appointed administrator. On July 30, 1900, he entered into the following written agreement with Hastings:

"Memorandum of agreement made this 30th day of July, 1900, between Joel N. Hastings, of Chicago, Illinois, party of the first part, and Wm. J. Cameron, administrator of the estate of Wm. H. Cameron, deceased, of Chicago, Illinois, party of the second part:

"*Witnesseth,* that Joel N. Hastings agrees to pay a certain second mortgage recorded in Lake county, Illinois, as document No. 70,334, given by Arno B. Winns and wife to H. P. Tilden to secure a note of $1000, said note and interest at this date amounting to $1023.83. Said Joel N. Hastings also agrees to renew for five years from November 11, 1900, a certain first mortgage for $4000 recorded in Lake county, Illinois, as document No. 63,552, given by Horace P. Tilden *et al.* to J. H. Garrison to secure the notes therein described, amounting to the principal sum of $4000, said renewal to be made by indorsement on the present notes. In consideration of this payment of note for $1000 and renewal of loan of $4000 the party of the second part agrees to obtain, within ninety days from date, a good and valid conveyance of that portion of the property known as Lakeside Hotel property lying north and west of the county road and extending to the water's edge.

"In witness whereof the parties hereunto have hereto set their hands and seals the day and year first above written.

Witness: Edward F. Brant.

JOEL N. HASTINGS,
WM. J. CAMERON, *Admr.*"

Hastings paid the $1000 note, had the $4000 mortgage extended, and conveyed the two lots to William J. Cameron which he had agreed to convey to William H. Cameron. William J. Cameron never obtained any conveyance of the property and no conveyance of the title was ever made to Hastings, who continued in the occupation of the property until August 1, 1908, when he sold and conveyed it to the complainant and William Herbertz, who at once took pos-

session of it and continued in the possession until December 2, 1912, when Herbertz conveyed his interest to the complainant, who has since been in possession. On March 12, 1909, the complainant and Herbertz paid the taxes for the year 1908. They also paid the taxes for 1909, 1910 and 1911. The taxes for 1912, 1913 and 1914 were paid by the complainant. On October 4, 1915, the complainant began this suit. On February 3, 1916, the appellants filed their answer, denying the complainant's title and relying upon their title derived from their father. On the same day George W. Cameron filed a cross-bill, and on March 10 Simeon O. Cameron and Alfred L. Cameron also filed a cross-bill, each praying for partition of the premises. On December 16, 1909, the county of Lake executed a deed to Colon H. Ostrander for a tract of land including a part of the land in controversy in this suit. The deed was executed in accordance with a petition of Ostrander stating that he had acquired the title to certain lands, to a portion of which he was informed the county claimed title, and praying for a deed in consideration of $1.25 an acre. The petition was referred to the swamp land committee, which reported recommending that it be granted, and the deed was executed by the county clerk in accordance with the direction of the board of supervisors.

The appellees claim to have established title in themselves by reason of the contract for the exchange of lands between William H. Cameron and Hastings and its performance; by reason of the contract between William J. Cameron and Hastings and its performance; by the seven years Statute of Limitations; by estoppel; by *laches;* and by the deed from Lake county so far as it included any of the land in controversy.

In regard to the last claim, the court made no finding that any title was conveyed by the county's deed or that any part of the land was, in fact, swamp and overflowed land. There was no evidence that the Secretary of the In-

terior had determined that the land was swamp and over-flowed land. Had he done so that determination would have been conclusive. (*State* v. *New,* 280 Ill. 393.) In the absence of such determination it was necessary for the appellees to show that the land was, in fact, swamp and overflowed land. The act of Congress of September 28, 1850, granting to the States the "swamp and overflowed lands made thereby unfit for cultivation" was a present grant of all the public lands of the quality mentioned to the States within which they lie. This description requiring something more than a mere reference to section, township and range to identify the particular tracts, it was made the duty of the Secretary of the Interior to furnish the evidence for that purpose. The title of the State does not, however, depend upon the act of the Secretary but upon the act of Congress, and if the Secretary has failed to furnish the State with the evidence, the fact may be proved by any witnesses whose personal knowledge would enable them to testify as to the character and condition of the land. (*Wabash, St. Louis and Pacific Railway Co.* v. *Mc-Dougal,* 113 Ill. 603; *Hannibal and St. Joseph Railroad Co.* v. *Smith,* 9 Wall. 95; *Irwin* v. *San Francisco Savings Union,* 136 U. S. 578.) The appellees, who claim that the title to the land passed under the terms of the grant, have the burden of showing that the land was of the description mentioned in the grant,—that is, swamp and overflowed land. (*Buena Vista County* v. *Iowa Falls and Sioux City Railroad Co.* 112 U. S. 165.) The act of Congress provided that in making out lists and plats of swamp and over-flowed lands, all legal subdivisions the greater part whereof is wet and unfit for cultivation shall be included in said lists and plats, but when the greater part of a subdivision is not of that character the whole of it shall be excluded therefrom. "The legal subdivisions contemplated by the law were forty-acre tracts." (*Buena Vista County* v. *Iowa Falls and Sioux City Railroad Co. supra.*) A claimant must

prove that the greater part of the legal subdivision was wet and unfit for cultivation. (*Hogaboom* v. *Ehrhardt,* 58 Cal. 231.) Evidence was introduced that sometimes when the water in the lake was high a part of the land was overflowed, but none that the greater part of any legal subdivision was so overflowed.

The claim under the Statute of Limitations was not made out. The complainant's color of title and possession began on August 1, 1908. He filed his bill on October 4, 1915. His first payment of taxes was on March 12, 1909. Color of title, possession and payment of taxes must concur before the statute begins to run, and seven full years must have intervened between the day when the first payment of taxes was made and the day of the commencement of the suit. (*Clark* v. *Lyon,* 45 Ill. 388; *Morrison* v. *Norman,* 47 id. 477; *Glos* v. *Wheeler,* 229 id. 272.) The seven years expired on March 12, 1916. The complainant had begun his suit four months before that date, and on February 3, 1916, the appellants filed their answer denying his title and relying upon their own derived from their father. On the same day George W. Cameron filed a cross-bill, and on March 10 Simeon O. Cameron and Alfred L. Cameron filed a cross-bill, each praying for a partition of the premises. The Statute of Limitations does not run after suit begun by the adverse party.

Hastings neither performed nor offered to perform his contract with William H. Cameron. He took possession of the premises and put improvements on them, but so far as the evidence shows he never tendered performance of the contract on his part by offering to convey to Cameron the lots which he had agreed to convey. After Cameron's death he might, perhaps, have compelled performance by his heirs, but he made no effort to do so. He made the contract with the administrator, which does not purport to bind the latter's brothers or to be made in their behalf. William J. Cameron merely bound himself to obtain a good

and valid conveyance of the property. There is no evidence that he was acting with authority from any of the other heirs, that they knew anything about this contract, that they ever had any interest in the lots Hastings conveyed to William J. Cameron, or that they received any benefit from them. They cannot be said to have ratified the contract, for there is not the slightest evidence that they ever received any knowledge of it. Deeds of these lots, or parts of them, were introduced as follows: One dated February 9, 1903, from Fannie C. Duer, who was William H. Cameron's widow and had married again after his death, to William J. Cameron; one dated April 26, 1905, from William J. Cameron to Alfred L. Cameron; one dated October 3c, 1906, from Alfred L. Cameron to William J. Cameron; one dated December 7, 1906, from George W. Cameron to William J. Cameron; one dated December 8, 1906, from Simeon O. Cameron to William J. Cameron; and one dated December 7, 1906, from William J. Cameron to Marie Avignon. There is nothing to indicate why these deeds were executed. Simeon O. Cameron testified that he signed a deed and delivered it to William J. Cameron; that his brother told him that the property was taken from the Hastings Express Company at $1000 on a balance of $2000 due on their building to William H. Cameron when he died. George testified that he left everything to his oldest brother, William; that he was a minor, never read any of the papers, and if his brother wanted anything signed he signed it.

Hastings performed his contract with William J. Cameron at the time it was executed, but Cameron failed to perform his undertaking within the ninety days or at any time. Upon the death of William H. Cameron his title descended to his five sons as tenants in common. One of the sons, Elmer D. Cameron, died a few years after his father leaving no descendants or widow, and by his death the other four each succeeded to one-sixth of his one-fifth

interest, and his mother, Fannie C. Duer, to two-sixths of such interest. Their title was unaffected either by the contract of William J. Cameron or its breach.

The appellants are not estopped from asserting their title. It is an essential element of an equitable estoppel that the person asserting it shall have done or omitted some act or changed his position in reliance upon the representations or conduct of the persons sought to be estopped. *Powers* v. *Wells,* 244 Ill. 558.

It is insisted that the appellants having accepted the consideration for their land and having permitted Hastings to expend money in making improvements on the land are estopped from now claiming ownership of it. Hastings took possession and made his improvements on the strength of his contract with William H. Cameron and in the latter's lifetime and not in reliance on the conduct of the appellants. He continued in possession after William H. Cameron's death under the same contract and under the contract with William J. Cameron, and not in reliance on any conduct of the appellants. It is not even shown that he knew of the deeds between the Cameron heirs, much less that he relied on them; and there is no evidence that they accepted the benefit of his conveyance to William J. Cameron, for they knew nothing about it. They were all bricklayers, worked at their trade, and after their father's death knew nothing of the land except that one or another of them occasionally was in the neighborhood or at the hotel for a day or two. Hastings was not misled by their conduct but by reliance upon his contract with William J. Cameron.

The claim that the appellants were guilty of *laches* can not be sustained. Mere delay for any period short of the Statute of Limitations could not bar their action. It is only when the delay is accompanied by some act done or permitted, some change of relations or conditions, or some other element rendering it inequitable to permit the owner to assert his title, that *laches* will bar his right within the

statutory period. *Compton* v. *Johnson,* 240 Ill. 621 ; *Hutson* v. *Wood,* 263 id. 376; *Lynn* v. *Worthington,* 266 id. 414; *Stowell* v. *Lynch,* 269 id. 437.

The decree will be reversed, with directions to dismiss the amended and supplemental bills as to the widow and heirs of William H. Cameron except William J. Cameron, and to enter a decree quieting the title of the appellees to the land in controversy against William J. Cameron and for a partition and accounting consistent with the views expressed in this opinion.

*Reversed and remanded, with directions.*