(No. 26481.— )
L. M. HARLAN *et al.* Appellees, *vs.* E. C. DOUTHIT *et al.* Appellants.

*Opinion filed January 22, 1942.*

SMITH, J., took no part.

CRAIG & CRAIG, WALTER DAVISON, and MAURICE DEWITT, (L. G. OWEN, of counsel,) for appellants.

HUGH V. MURRAY, JR., for appellees.

Mr. Justice Wilson delivered the opinion of the court:

A decree of the circuit court of Jefferson county ordered partition of a parcel of real estate consisting of 40 acres between the plaintiff, L. M. Harlan, and one of the defendants, E. C. Douthit. From this decree, Douthit and his wife, Thula Douthit, and a third defendant, the Carter Oil Company, prosecute an appeal, a freehold being involved.

William Snow, a resident of Jefferson county, died intestate on December 16, 1884. He left surviving as his only heirs-at-law, his widow, a son, Charles, a daughter, Nancy Snow Benson, and eight other children. The ten children inherited the tract of 40 acres as tenants in common subject to the dower of their mother. The latter died without dower having been assigned to her. Nancy Snow Benson died intestate in 1885, leaving as her only heirs-at-law, her husband, James Benson, and their four children, Alma, Della, Ina and Eugene. James Benson died without remarrying. The son, Eugene, died without legal descendants, leaving his three sisters as his only heirs. They then owned the one-tenth interest in the property inherited by their mother from William Snow. March 25, 1939, Alma Snow Church, Della Snow Desgranges and Ina Snow Bush, by a quitclaim deed, conveyed all their interest in the 40 acres to the plaintiff, L. M. Harlan. Douthit claims title through Charles Snow who was nine years of age when his father died and ten when his sister, Nancy, died. So far as the record discloses, the heirs of William Snow, deceased, prior to 1932, never executed a deed to the property in controversy to Charles Snow nor to anyone else. For more than 40 years, however, taxes were assessed and levied against the property in the name of Charles Snow who paid the taxes to and including those for the year 1925. Taxes for the year 1926 being delinquent, the land was sold at a tax sale and purchased by Judge Albert Watson on June 13, 1927. June 20, 1929, Watson, hav-

ing paid the taxes for the two succeeding years, 1927 and 1928, obtained a tax deed to the property. July 1, 1929, Watson conveyed the land to Charles Snow by a quitclaim deed. According to Watson, Snow made an oral agreement with him, prior to the expiration of the time for redemption, to purchase the land after the issuance of a tax deed but that he, Watson, purchased the land for himself and not at Snow's request. The taxes for the year 1929, payable in 1930, were not paid and, again, on June 23, 1930, Watson purchased the property at a tax sale. Taxes for the year 1930, payable in 1931, were paid by Snow. Taxes for the year 1931, payable in 1932, were again paid by Watson on February 18, 1932. Thereafter, on February 26, 1932, Snow redeemed from the tax sale for the year 1929, by paying to the county clerk the redemption money which included the taxes, amounting to $4.96, for the year 1931. The entire amount of the redemption money, except the clerk's fee of twenty-five cents for the certificate, was paid to Watson by the county clerk. It appears that in the interim, in the spring of 1930, Snow entered into possession of the property and continued in possession until February 20, 1932, when he conveyed the entire 40 acres by warranty deed to the defendant, E. C. Douthit. The latter who had previously leased the land, in 1931, from Snow, immediately went into possession, built a house and made improvements on the land to the extent of $4000, and has since occupied the property as his homestead. Subsequent to the deed to Douthit, he paid the taxes on the land for the year 1932, due in 1933. March 20, 1933, was the initial date of the payment of taxes by Douthit. Thereafter, he paid the taxes for the years 1933 to 1938, inclusive. The taxes for the year last named were paid on April 19, 1939, covering taxes for the year 1938. Plaintiff instituted his action for partition on February 28, 1940, six years eleven months and eight days after the first payment of taxes by Douthit on March 20,

1933. The taxes for the year 1939, payable in 1940, were paid by Douthit in March, 1940, after the litigation was instituted.

December 18, 1935, Douthit and his wife executed an oil and gas lease to W. O. Schock who, in turn, assigned the lease to the defendant, the Carter Oil Company, on October 20, 1939. In the meantime, on October 23, 1936, Douthit and his wife conveyed, by mineral deed, a part of their royalty interest in the oil and gas lease to Oliver Telford who, in turn, sold portions of his royalty to Frank Buttram, Errett R. Newby, L. F. Rooney, W. O. Allen, Leroy G. Rogers, and the Foster Investment Corporation, additional parties defendant.

Plaintiff, by his complaint filed on February 28, 1940, alleged that he was the owner of an undivided one-tenth interest in the 40 acres in question, as tenant in common with the defendant, E. C. Douthit, who, it is charged, was the owner of an undivided nine-tenths interest, subject to the oil and gas lease and, also, the mineral deed previously mentioned. By their answer, the defendants, E. C. and Thula Douthit, denied plaintiff's right to partition and averred that (1) by virtue of the tax, quitclaim and warranty deeds (2) possession of the property, and (3) payment of taxes by Snow and Douthit, the latter owned the property in fee simple conformably to the provisions of section 6 of the Statute of Limitations. The answer of the defendant Carter Oil Company to the same effect also averred that its lease covered the entire tract. These three defendants, by their respective answers, as amended, interposed the additional defense that by reason of the improvements made upon the property, and other facts narrated, plaintiff was barred by *laches* from asserting any claim or title to the property. The answer of the other defendants alleged that they were the owners in the aggregate of an undivided one-half interest in the minerals under the property conveyed to them by Douthit. Plaintiff replied to the

several answers. Evidence was heard and June 11, 1940, a decree entered finding that plaintiff was the owner of an undivided one-tenth interest in the property and that the defendant, E. C. Douthit, was the owner of an undivided nine-tenths interest, subject to the oil and gas lease of the Carter Oil Company and, also, subject to the mineral deeds and mineral interests acquired from Telford, the original grantee under the mineral deed executed by Douthit and his wife. The decree provided that if the nine-tenths interest in the land be set off to Douthit the oil and gas lease should be operative only against such portion of the property as might be set off to him, and that the lease should be wholly ineffective as to the portion of the real estate allotted to the plaintiff. Further, the decree provided that, in making partition, the commissioners appointed by the chancellor should set off to Douthit the part of the premises on which he had caused improvements to be made and the value of the improvements should not be taken into account. This appeal by E. C. and Thula Douthit and the Carter Oil Company followed. The remaining defendants did not join in the appeal. Douthit, his wife, and the Carter Oil Company will hereinafter be referred to as defendants.

Admittedly, Douthit is the successor in interest of all of William Snow's children excepting the one-tenth interest of Nancy Snow Benson. To obtain a reversal of the decree, defendants contend that section 6 of the Statute of Limitations is a bar to plaintiff's action and, conversely, that Douthit has acquired an indefeasible title under the statute and that the Carter Oil Company's lease covers the whole interest in the premises. Section 6 of the Statute of Limitations (Ill. Rev. Stat. 1941, chap. 83, par. 6, p. 1995) ordains: "Every person in the actual possession of lands or tenements, under claim and color of title, made in good faith, and who shall for seven successive years, continue in such possession, and shall also, during said

time, pay all taxes legally assessed on such lands or tenements, shall be held and adjudged to be the legal owner of said lands or tenements, to the extent and according to the purport of his or her paper title. All persons holding under such possession, by purchase, devise or descent, before said seven years shall have expired, and who shall continue such possession, and continue to pay the taxes as aforesaid, so as to complete the possession and payment of taxes for the term aforesaid, shall be entitled to the benefit of this section."

Defendants insist that the statute begins to run as soon as adverse possession under color of title is taken, irrespective of the time when taxes are first paid. Accordingly, they maintain that the requirements of section 6 are satisfied by the payment of all taxes which become due after adverse possession is taken, provided the party having color of title and paying the taxes was, as here, in possession of the premises for seven years. The law is settled adversely to defendants' contention. In order to defeat plaintiff's title and establish a bar under section 6 it is incumbent upon defendants to prove (1) claim and color of title, made in good faith, (2) payment of taxes for seven successive years, and (3) continuous, uninterrupted, hostile possession for the statutory period adverse to the plaintiff. (*Dunlavy* v. *Lowrie,* 372 Ill. 622; *Town of Kaneville* v. *Meredith,* 361 id. 556; *Blair* v. *Johnson,* 215 id. 552; *Burton* v. *Perry,* 146 id. 71.) It is likewise settled that these three conditions must concur before the statute begins to run, and seven full years must have intervened between the day when the first payment of taxes was made and the day of the commencement of the litigation. (*DeProft* v. *Heydecker,* 297 Ill. 541.) The Statute of Limitations does not run after suit begun by the adverse party. (*Manson* v. *Berkman,* 356 Ill. 20; *DeProft* v. *Heydecker, supra; Woods* v. *Glos,* 257 Ill. 125; *Converse* v. *Dunn,* 166 id. 25.) It is apparent from the facts recounted that seven years

did not elapse from the date of the first payment of taxes, March 20, 1933, and the day this action was commenced, namely, February 28, 1940. Section 6 of the Statute of Limitations is not a bar to plaintiff's claim.

Defendants contend, in the alternative, that the first tax payment to be considered was made more than seven years prior to February 28, 1940, the day plaintiff filed his action for partition. Section 210 of the Revenue act then in force, (Cahill's Stat. 1933, chap. 120, par. 226, p. 2339,) prescribed the manner of redeeming property from a tax sale. The person redeeming was required to pay the amount of the sale and the penalty bid. The statute provided further: "The person redeeming shall also pay the amount of all taxes and special assessments accruing after such sale with seven (7) per cent penalty thereon for each year or portion thereof intervening between the time of such sale and the time of redemption, in all cases where the purchaser at the tax sale, or his assignee, shall pay such subsequent tax or special assessment; * * * and it is hereby made the duty of the county clerk to include the amount of the subsequent taxes or special assessments paid by the purchaser or holder of the tax certificate of redemption." It thus appears that on February 26, 1932, when Snow redeemed from the tax sale made on June 23, 1930, for the delinquent taxes for the year 1929, he was required by the applicable statute to pay the amount for which the property was sold at the tax sale with the penalties provided by section 210, and, in addition thereto, all taxes for subsequent years paid by Watson, the holder of the tax certificate, with a penalty of seven per cent upon the amount of taxes so paid, plus the costs and other items provided by law. The payment of the taxes for the year 1931 by Snow as a part of the redemption money did not constitute the payment of the 1931 taxes by him. On the day last named, February 26, 1932, there were no taxes due on the property for the year 1931, the taxes having already been paid by

Watson. By his payment of the 1931 taxes eight days earlier, Watson satisfied the tax and discharged both the land and the owner from all taxes assessed upon the property for the particular year. When Snow subsequently paid an amount of money to the county clerk as a part of the redemption corresponding in an amount to the tax which had previously existed against the land, it was not, in contemplation of law, payment of the tax for the adequate reason that the tax had already been paid and, consequently, there was then no tax legally assessed against the land. *Clayton* v. *Feig,* 188 Ill. 603; *Osburn* v. *Searles,* 156 id. 88; *Morrison* v. *Kelly,* 22 id. 609.

An additional reason why the redemption by Snow from the tax sale cannot be considered as a payment of the 1931 taxes is that the county clerk is without authority to receive taxes. He is, of course, empowered to receive redemption money but does not, and cannot, receive taxes. In short, Snow's payment of $4.96, as a part of the redemption money, on February 26, 1932, the amount of taxes for the year 1931, which had previously been paid by Watson, purchaser at the tax sale, did not pay the 1931 taxes but paid, instead, only a portion of the redemption money. Watson's payment of the taxes for the year 1931 and their inclusion and payment by Snow as a part of the redemption money in 1932, it follows, cannot avail defendants as a payment of taxes under section 6 of the Statute of Limitations. In no event does the payment of the redemption money by Charles Snow strengthen the title of defendant E. C. Douthit since a redemption by one co-tenant inures to the benefit, also, of his co-tenants, upon the condition that they or those claiming under them will pay the one redeeming their *pro rata* share of the redemption. *Lomax* v. *Gindele,* 117 Ill. 527.

It is true, as defendants maintain, that the tax payments may be made by an agent in his own name for the holder of the color of title if the fact is clearly and suffi-

ciently shown. (*Gochenour* v. *Logsdon,* 375 Ill. 139; *Foster* v. *Letz,* 86 id. 412; *Hardin* v. *Gouveneur,* 69 id. 140.) The facts did not warrant the conclusion that Watson paid taxes for the year 1931 for Charles Snow, as Snow's agent. On the other hand, the testimony offered in behalf of defendants negatives the existence of any such agency. Watson testified that he had no agreement of any kind with Snow with respect to taxes until after the taxes had been paid. Snow testified that he had no arrangement with Watson to buy this land for taxes. Furthermore, defendants' counsel admitted upon the trial that in some of the years in controversy taxes were paid by Watson without any inference that he paid the taxes for Snow.

Finally, defendants maintain that the plaintiff and his predecessors in title have been guilty of *laches* and that plaintiff, therefore, is barred from asserting any title to the property. Plaintiff is the owner of the record title to an undivided one-tenth interest in the land, and is entitled to partition unless Douthit has a superior title. This, they failed to prove. Not having brought themselves within the requirements of section 6 of the Statute of Limitations, they are not in a position to advance the defense of *laches*. Mere delay for any period short of the Statute of Limitations will not bar an action to assert title to land. It is only when the delay is accompanied by conduct or special circumstances rendering it inequitable to permit the owner to assert title, that *laches* will bar his right within the statutory period. (*Wall* v. *Chicago Park District,* 378 Ill. 81; *Andrews* v. *Floyd,* 308 id. 559; *DeProft* v. *Heydecker, supra.*) For nearly a half century the property was in possession of a tenant in common of plaintiff's grantors, and so remained until Douthit took possession under his deed in February, 1932. Mere possession by one tenant in common who pays the taxes on the entire property irrespective of how long continued, is not, of itself, we have

recently observed, sufficient to overcome the presumption that the possession of one is the possession of all of the others. (*Dunlavy* v. *Lowrie, supra.*) The presumption has not been overcome in the present case, and *laches* is not a bar to plaintiff's action.

The decree of the circuit court is right, and it is affirmed.

*Decree affirmed.*

Mr. Justice Smith took no part in this decision.