316 P.2d 320

Granville A. COOPER, administrator of the estate of Christopher C. Cooper, deceased, Plaintiff and Respondent,

v.

The CARTER OIL COMPANY, a corporation, Joseph Wilcken and Cleo Wilcken, his wife, et al., Defendants and Appellants.

Joseph WILCKEN, Cross-Plaintiff and Appellant,

v.

Granville A. COOPER, administrator of the estate of Christopher C. Cooper, deceased, et al., Cross-Defendants and Respondents.

No. 8355.

Supreme Court of Utah.

Sept. 25, 1957.

George B. Stanley, Heber, McKay, Burton, McMillan & Richards, Salt Lake City, for appellant.

Nielsen & Conder, Salt Lake City, for respondent.

CROCKETT, Justice.

Plaintiff, record title holder, sued defendants to quiet title to certain real property in Duchesne County. As a defense, Joseph Wilcken set up a claim of title in himself derived from the county through tax proceedings and sale to him, and by adverse possession thereunder for a period of seven years. The trial court concluded (a) that Wilcken did not have color of title for the required seven years, (b) that he had not paid taxes for that full period and (c) that he failed to prove adverse possession. We believe that such conclusions cannot reasonably be justified from the evidence.

(a) As to color of title: conceding that there were defects in the tax proceedings as a result of which the property was conveyed to Duchesne County, the defendant had color of title from and after 1943, when he took possession of the property under a written contract of purchase from the

county;[1] and such status was not delayed until 1947 when the county deed actually issued, as ruled by the trial court.

■ (b) Failure to pay taxes: the property had been erroneously assessed to one Van Tassel, who paid the taxes during part of the seven-year period. It is undisputed, however, that during that period Van Tassel and the defendant had some arrangement for joint operation of the property. Therefore, any payment of taxes by Van Tassel would inure to the benefit of both. The defendant offered to prove an express agency and to show reimbursement to Van Tassel, which evidence the court refused to admit.

■ It is well settled that the requirement of payment of taxes is satisfied if payment is made by the claimant, or by someone on his behalf or in privity with him.[2] This is so even though the agent pays the taxes in his own name if it is shown to be for the adverse claimant.[3] In Edwards v. Tenney, 65 Idaho 784, 154 P.2d 143, where the owner made arrangements for another to pay the taxes, such payment was said to inure to the benefit of the owner. The rule is stated in 132 A.L.R. 230:

"As a general rule the payment of taxes required by statute as a condition to establishing title to land by adverse possession may be made either by the adverse claimant himself or by a third person or agent on his behalf."[4]

It follows that it was error to reject the evidence offered that Van Tassel paid the taxes for defendant, and was reimbursed therefor. In addition to the above, Van Tassel, who paid the taxes erroneously assessed to him, had conveyed his interest in the property to the defendant Wilcken. Hence, defendant's "predecessors and grantors have paid all taxes which have been levied and assessed upon such land according to law," satisfying our statute.[5]

■ (c) Adverse possession is the remaining and more difficult question. It is recognized that in order for a claimant to initiate and establish a new title by adverse possession, he must maintain open, notorious, continuous, exclusive and adverse possession of the property for a period of seven years.[6] The purpose underlying this rule is that the "possession" be of such character as to plainly manifest that the claimant is asserting ownership of the property

---

1. Welner v. Stearns, 40 Utah 185, 120 P. 490; Bozievich v. Slechta, 109 Utah 373, 166 P.2d 239.
2. Williams v. Stillwell, 217 Cal. 487, 19 P.2d 773; Comstock v. Finn, 13 Cal.App. 2d 151, 56 P.2d 957; 2 C.J.S. Adverse Possession § 174, p. 749.
3. Harlan v. Douthit, 379 Ill. 15, 39 N.E.2d 345.

4. See also Gray v. Walker, 157 Cal. 381, 108 P. 278 and Langley v. Young, 72 Colo. 466, 211 P. 640.
5. 78–12–12, U.C.A.1953.
6. See Adverse Possession of Land Titles in Utah by Edward L. Montgomery, 3 Utah Law Review 294, and authorities therein cited; 2 Tiffany, Real Property 1925, 2d ed.

against the owner and the world and to prevent one who may occupy land in an equivocal or surreptitious manner from using such possession as a basis to claim title by adverse possession.[7]

We readily agree that inasmuch as the tax title was defective, it was essential for Wilcken to meet the requirements of the above rule. We also remain aware that the question whether the possession satisfies its requirements is one of fact, and the trial court's refusal to so find cannot be overturned unless the evidence is susceptible of no other reasonable conclusion.

The weakness in defendant's position in regard to adverse possession, as pointed out by the plaintiffs, is that the property in question was unfenced grazing land, and was only actually occupied by the defendant for a period of about three weeks each year during which time the feed was entirely grazed off. It was shown that the cattle of a Mr. Solomonson and some others roamed over the land during the period; a Mr. Monk was on the land with his sheep outfit for a few days in 1950; and a Mr. Lisonbee and others went on the property for the purpose of racing horses.

Although the plaintiffs agree that it may be possible under our statute to establish adverse possession to unenclosed land by using it "for pasturage or for the ordinary use of the occupant"[8] they argue that these facts bring the case within the purview of the rulings in Jenkins v. Morgan,[9] and Adams v. Lamicq.[10] The defendants in the Jenkins case had purchased a tax title which was found invalid for the lack of an auditor's affidavit, and they claimed ownership by payment of taxes and adverse possession, which this court rejected saying: "The only evidence of any possession of the land consists of the use by the defendants of the land for the grazing of their cattle. However, this was not exclusive. One Okelberry also used the land in dispute for the grazing of his cattle during the years in question, * * *" and held that this did not meet the requirements of the statute. In the Adams case it was stated:

"* * * pasturing during the entire grazing season of each year during which feed is available, *if done to the exclusion of others,* is a sufficient use and occupation of land, which is reasonably fit for grazing purposes only, to constitute the occupation and posses-

---

7. Ibid., therein quoting, "The disseisor must unfurl his flag on the land and keep it flying so that the owner may see, if he will, that the enemy has invaded his domains, and planted the standard of conquest." Helm, Adverse Possession, 8 Marq.L.Rev. 104, 108.

8. 78–12–9(3), U.C.A.1953.

9. 113 Utah 534, 196 P.2d 871.

10. 118 Utah 209, 221 P.2d 1037, 1039.

sion necessary to establish title by adverse possession. * * * "

It is no doubt true that if the facts emphasized by the plaintiffs as hereinabove recited were viewed in isolation, it might be concluded that the grazing of the land over a short period each year could have been done in such a manner as not to meet the requirements of the rule for the establishment of title by adverse possession. However, as is usual in adjudicating controversies, it is necessary that the entire picture be surveyed in composite to make the proper deduction as to the rights of the parties involved. When so appraised it appears that there are aspects of the instant case which distinguish it from the authorities relied upon by the plaintiffs.

It is to be kept in mind that the primary reason we are concerned with the nature of the defendant's possession is for the purpose of determining what notice it would give to the owners and to the world that he claimed ownership of the property. In that connection it is important that, although the Coopers do contend that the defendant has not established title by adverse possession, they do not directly question the fact, as shown by the evidence, that the defendant moved onto the land each year with his whole sheep outfit, including his camp and accoutrements, and remained there for about three weeks and until all the feed was grazed off; that this was done under a claim of ownership through his deal with the county; nor do they deny that they had notice of such facts. Their own evidence shows that two members of the Cooper family, who appeared to be representing the family interests, talked to Wilcken about the matter during the period in question. Some time between 1943 and 1947, Lee Cooper asked Wilcken if he would turn the property back to the Coopers. He claimed that Wilcken agreed to do so, saying he was interested only in the grazing rights. In the other conversation, another member of the Cooper family admitted that Wilcken made an outright refusal of a request to turn the property back to them. Thus it is clear that the Coopers had actual knowledge of Wilcken's possession of the property and of his claim of ownership.

The evidence of the fact that others were on the property during the adverse period was introduced for two purposes: (a) to show that defendant's possession was not exclusive, and (b) that it was interrupted. Once the fact of possession which is exclusive and adverse as against the owner, who has knowledge of such facts, is established as hereinabove set forth, the importance of the testimony concerning the conduct of others on this property becomes minimal. The acts of Solomonson, Monk, Lisonbee and others were such as might have been done on any unfenced range land.

It is common knowledge that in the unfenced grazing areas of our state entry

or trespass upon the lands of others is commonly done and is not regarded as of any serious import. People often go on such lands for riding, hiking, hunting and other such innocuous purposes. These things are done casually and as a matter of course without any objection from the owners, and in fact, without any regard whatever as to the ownership of the land, but if challenged or forbidden, would be desisted immediately. It is also well known that in such unfenced areas the livestock of others may roam over such properties (as Mr. Solomonson said his cattle did on this land although he attempted to herd them off); or others, having range in the area, may drive their livestock across it. Stockmen owning unfenced parcels in range country usually tolerate such conditions for reciprocal privileges from others. Furthermore, as to interrupting possession: these parties were in no way in privity with, nor acting for, the Coopers. Nor were they doing anything inconsistent with or interrupting the possession of Wilcken, nor doing anything more than they may well have done on any other unfenced land in the area without it appearing to others that they claimed any interest in or made any challenge to the ownership of such lands.

It is our opinion that the matters hereinabove discussed, considered together, exclude any other reasonable conclusion than that Wilcken had established his title by adverse possession.

The case is remanded with instructions to quiet title to the subject property in defendants. Costs to appellants.

McDONOUGH, C. J., WADE, J., and KELLER, District Judge, concur.

WORTHEN, J., having disqualified himself, does not participate.

HENRIOD, J., does not participate.