NOTICE

Decision filed 04/07/20. The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2020 IL App (5th) 190128-U

NO. 5-19-0128

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| CHANCE W. WOODSIDES and DENISE L. WOODSIDES, | ) ) ) | Appeal from the Circuit Court of Perry County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 16-CH-15 |
| EUGENE RODELY JR., WANDA RODELY, and REGIONS BANK, | ) ) ) ) | Honorable Eugene E. Gross, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

JUSTICE OVERSTREET delivered the judgment of the court.
Justices Cates and Boie concurred in the judgment.

**ORDER**

¶ 1   *Held*: The circuit court properly declined to quiet title in plaintiffs whose predecessors-in-title knew that transferring trustee had resigned and could not transfer fee simple interest in property at issue from Trust that did not own the property at issue, properly declined to award title in plaintiffs based on adverse possession due to predecessors' lack of good faith and plaintiffs' failure to pay taxes for seven years, and properly dismissed the plaintiffs' slander of title action.

¶ 2   The plaintiffs, Chance W. and Denise L. Woodsides, filed a complaint in the circuit court of Perry County seeking to quiet title in property also claimed by their cousins, the defendants, Eugene Rodely Jr. (Eugene Jr.) and Wanda Rodely (the Rodely-defendants), and alleging a slander of title claim against the Rodely-defendants and Regions Bank for the allegedly wrongful filing of a deed and mortgage on the property. The parties dispute the ownership of

1

approximately 15.4 acres of real estate hereinafter referred to as the "SW SW SW Parcel" and the "5-acre Parcel," which are both located in the Southwest Quarter of the Southwest Quarter of Section 28 Township Five South, Range One West of the Third Principle Meridian, Perry County, Illinois (the "SW SW Parcel"). After a bench trial, the circuit court entered an order finding title in neither party and dismissing the slander of title action pursuant to the statute of limitations.

¶ 3     On appeal, the plaintiffs contend that trustee's deeds executed by Eugene A. Rodely Sr. (Eugene Sr.) to their predecessor in title, Freda Robinson, conclusively conveyed the property in question, that Eugene Sr. had the authority pursuant to Trust language to convey the real estate to Freda, their slander of title claim was not barred by the statute of limitations, they and their predecessors in title established ownership of the property pursuant to section 13-109 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/13-109 (West 2018)), the circuit court should have dismissed the Rodely-defendants' counterclaim to quiet title, the circuit court's findings of fact were in error, and the circuit judge's impartiality in the case might reasonably be questioned because he had personal knowledge of disputed evidentiary facts. For the following reasons, we affirm as modified.

¶ 4                                   BACKGROUND

¶ 5     Prior to 1974, George Rodely and Clara Rodely owned the SW SW Parcel. George died in 1974, and Clara died in 1984. Clara died intestate, and the SW SW Parcel transferred to George and Clara's four children. Eventually, three-quarters of the SW SW Parcel was owned by one of the children, Eugene Sr., and the remaining one-quarter of the SW SW Parcel was owned by his sister, Freda.

¶ 6     On October 5, 2000, Eugene Sr. executed a trust (the Trust), article eight of which was entitled "Trustee Provisions," and provided that "[u]pon the death, incapacity as hereafter defined, or resignation of [Eugene Sr.] as Trustee, [David Rodely] shall become the Successor Trustee." Article eight further provided that "[a]ny Successor Trustee shall become such a Trustee by signing the original of this instrument and all then effective amendments to this instrument." Article nine of the Trust provided that a person was deemed "incapacitated" upon certification by two physicians that he is unable to properly care for himself or for his person or property.

¶ 7     In October 2000, Eugene Sr. conveyed the SW SW Parcel to the Trust, naming himself as trustee. This conveyance purported to transfer the entire SW SW Parcel to the Trust, despite the fact that Freda owned one-quarter of the SW SW Parcel. The relevant "Deed in Trust," wherein Eugene Sr. purported to transfer the SW SW Parcel to the Trust, stated as follows:

> "every deed, trust deed, mortgage, lease or other instrument executed by said trustee in relation to said real estate shall be conclusive evidence in favor of every person relying upon or claiming under any such conveyance, lease or other instrument (a) that at the time of the delivery thereof the trust created by this Indenture and by said trust agreement was in full force and effect, (b) that such conveyance or other instrument was executed in accordance with the trusts, conditions and limitations contained in this Indenture and in said Trust Agreement or in some amendment thereof and binding upon all beneficiaries thereunder, (c) that the Trustee was duly authorized and empowered to execute and deliver every such deed, trust deed, lease, mortgage or other instrument" (the "full power" language).

3

¶ 8    On January 15, 2001, Eugene Sr. executed an Illinois Short Form Power of Attorney for Property (755 ILCS 45/3-1 *et seq.* (West 2000)) appointing David Rodely as his agent. In a physician's statement dated July 13, 2001, subsequently submitted to Freda on October 7, 2003, Dr. Mohammed Shafi, M.D., noted that Eugene Sr. was in failing health due to Parkinson's disease and needed assistance with his personal business due to failing vision, hearing, and other physical limitations. Dr. Shafi stated that Eugene Sr. would benefit from having David act with power of attorney for property and as successor trustee of the Trust.

¶ 9    In September 2001, despite the earlier purported conveyance of his interest in the SW SW Parcel to the Trust, Eugene Sr., as an individual, purported to convey and quitclaim the SW SW SW Parcel (the Southwest Quarter of the Southwest Quarter of the Southwest Quarter of Section 28, Township Five South, Range One West of the Third Principal Meridian, Perry County, Illinois), to Freda. At the same time, Freda purported to convey and quitclaim her interest in the SW SW Parcel, except for the SW SW SW Parcel, to Eugene Sr. individually. On October 26, 2001, Eugene Sr., as trustee of the Trust, purported to convey the SW SW SW Parcel to Freda, and this deed was recorded on October 30, 2001. On June 17, 2002, Eugene Sr., as trustee of the Trust, purported to convey the 5-acre Parcel, described as the "the Southeast Quarter of the Southwest Quarter of the Southwest Quarter EXCEPT the East 300 feet of Section Twenty-eight (28) in Township Five (5) South, Range One (1) West of the Third Principal Meridian, Perry County, Illinois" to Freda, and this deed was recorded on June 19, 2002.

¶ 10    In 2001, the Perry County Assessor's Office adjusted the Property Record Card to reflect the removal of the SW SW SW Parcel (10 acres) from the SW SW Parcel that was held in the Trust. In 2002, the Perry County Assessor's Office adjusted the Property Record Card to reflect the removal of the 5-acre Parcel from the SW SW Parcel held in the Trust. The Property Record

Card denotes the transfer of the SW SW SW Parcel and the 5-acre Parcel to Freda and references the deeds from Eugene Sr., as trustee, to Freda.

¶ 11   For 2001, Freda paid the real estate taxes on the SW SW SW Parcel in the amount of $22.76, and the Trust paid $13 less in real estate taxes on the remainder of the SW SW Parcel than the year before. For 2002, Freda paid real estate taxes on the SW SW SW Parcel and the 5-acre Parcel in the amount of $279.94, which included taxes on the house located on the 5-acre Parcel, and the Trust paid $90.96 in real estate taxes, which was $258.58 dollars less than in 2001. For 2003 through 2008, Freda continued to pay property taxes on the SW SW SW Parcel and the 5-acre Parcel. From 2009 through 2012, Bruce and Brian Rodely, to whom Freda purportedly conveyed the SW SW SW Parcel and the 5-acre Parcel in 2009, paid the real estate taxes. In 2013 and 2014, the plaintiffs, to whom Bruce and Brian purportedly conveyed the property, paid the real estate taxes on the SW SW SW Parcel and the 5-acre Parcel.

¶ 12   On October 7, 2003, Eugene Jr.'s attorney wrote a letter to Freda, noting that the Trust stated that David would become successor trustee upon the incapacity of Eugene Sr. In the letter, Eugene Jr.'s attorney stated that Eugene Sr. had resigned as trustee as of January 15, 2001, having executed the Short Form Power of Attorney for Property, and therefore, any documents signed by Eugene Sr. after January 15, 2001, were ineffective. In the letter, Eugene Jr.'s attorney further noted that article nine, subsection E of the Trust defined incapacitated as certification by two physicians and attached Dr. Shafi's physician statement. In the letter, Eugene Jr.'s attorney requested that Freda convey the property back to the Trust.

¶ 13   In January 2004, after Eugene Sr.'s death in 2003, David, as the successor trustee to the Trust, purported to convey the SW SW Parcel by warranty deed from the Trust to Eugene Jr.,

5

and this deed was recorded January 23, 2004. In February 2010, Eugene Jr. acquired a mortgage from Regions Bank on the SW SW Parcel, and this mortgage was recorded March 11, 2010.

¶ 14     Meanwhile, in 2009, Freda purported to convey the SW SW SW Parcel and the 5-acre Parcel to her nephews, Bruce and Brian. In May 2013, Bruce and Brian purported to convey this same real estate interest by warranty deed to the plaintiffs, who included their sister, Denise, and her husband, Chance. From 2013 through 2018, the plaintiffs paid the real estate taxes on the SW SW SW Parcel and the 5-acre Parcel.

¶ 15     In 2017, Ameren purchased enlarged transmission easements across the SW SW Parcel from the plaintiffs and the Rodely-defendants. Attached to the easement that was signed by the plaintiffs on November 22, 2016, was a survey showing the SW SW SW Parcel and the 5-acre Parcel and a legal description matching their title. Attached to the easement that was signed by Eugene Jr. on March 13, 2017, was a survey showing the SW SW Parcel, except for the SW SW SW Parcel and the 5-acre Parcel. The Rodely-defendants did not transfer to their names electric service, water service, or United States Department of Agriculture accounts with regard to the SW SW SW Parcel or the 5-acre Parcel.

¶ 16     In 2016, the plaintiffs conducted a title search to acquire a construction loan, and the title work revealed the transfer from David, as successor trustee to the Trust, to Eugene Jr. and Regions Bank's mortgage dated February 24, 2010, involving the SW SW Parcel. Accordingly, on April 6, 2016, the plaintiffs filed their initial complaint to quiet title against the Rodely-defendants. On March 1, 2018, the plaintiffs filed a three-count, second-amended complaint to quiet title and added Regions Bank as a party-defendant. In count I of the second amended complaint, the plaintiffs asserted a claim to quiet title, seeking a declaration that they were the sole owners of the SW SW SW Parcel and the 5-acre Parcel based upon chain of title. In count

6

II, the plaintiffs sought damages for slander of title, for the recording of a deed and Region Bank's mortgage against the property.

¶ 17 In count III of the plaintiffs' second-amended complaint, the plaintiffs sought to quiet title to the SW SW SW Parcel and the 5-acre Parcel by adverse possession pursuant to their payment of taxes with color of title (735 ILCS 5/13-109 (West 2018)). The plaintiffs alleged that Freda had paid real estate taxes from 2001 through 2008, Bruce and Brian had paid real estate taxes from 2009 through 2012, and the plaintiffs had paid real estate taxes from 2013 through to the time of filing the complaint. The plaintiffs also alleged that Freda had taken possession of the SW SW SW Parcel and the 5-acre Parcel by renting the tillable farm ground to Bruce and Brian and renting the house located on the property to a tenant. The plaintiffs alleged that Bruce and Brian continued to farm the land after they acquired color of title and continued to farm it after the plaintiffs acquired color of title. The plaintiffs alleged that because Freda was in actual possession of the land, under color of title made in good faith, and had paid all taxes for a period in excess of seven years, and then subsequently conveyed color of title to Bruce and Brian, who also paid taxes, and who conveyed color of title to the plaintiffs, the plaintiffs must be held and adjudged to be the legal owners of the SW SW SW Parcel and the 5-acre Parcel.

¶ 18 On March 22, 2017, the Rodely-defendants filed a countercomplaint to quiet title. In their countercomplaint, the Rodely-defendants asserted that Bruce and Brian invalidly conveyed the SW SW SW Parcel and the 5-acre Parcel to the plaintiffs because Freda, as predecessor in title, did not hold title in these properties. The Rodely-defendants sought a declaration that they were the legal owners of the SW SW SW Parcel and the 5-acre Parcel, that the plaintiffs had no claim to the properties, and that the deeds purporting to transfer these properties to them were void.

7

¶ 19    On January 12, 2018, the plaintiffs filed a motion for leave to add Regions Bank as a necessary party. On October 25, 2018, Regions Bank filed a motion to dismiss the second-amended complaint. Noting that a disclaimer of interest in the SW SW Parcel and release of mortgage had been filed, Regions Bank argued that the plaintiffs' quiet title actions with respect to Regions Bank, counts I and III of the complaint, were moot. Regions Bank moved to dismiss count II of the second-amended complaint on the basis that Illinois slander of title claims must be commenced within five years of recordation on the instrument that forms the basis of the action. 735 ILCS 5/13-205 (West 2018). Regions Bank argued that because the mortgage was publicly recorded in 2010, the plaintiffs' 2018 slander of title claim against it was barred by the five-year statute of limitations. On November 2, 2018, the circuit court agreed and granted Regions Bank's motion to dismiss. On March 12, 2019, the circuit court denied the plaintiffs' motion to reconsider the dismissal order.

¶ 20    The evidence presented before the circuit court on December 7, 2018, revealed that Bruce and Brian, who were nephews to Eugene Sr. and cousins to Eugene Jr. and David, farmed the SW SW Parcel, including the SW SW SW Parcel and the 5-acre Parcel after Freda acquired the trustee deeds in 2001 and 2002. Bruce testified that they had farmed the SW SW Parcel since he was a child and that he knew of the circumstances of transfer between Eugene Sr. and Freda. Bruce testified that he had been aware of the dispute since 2002 or 2003, prior to purchasing the SW SW SW Parcel and the 5-acre Parcel from Freda in 2009. Bruce acknowledged that in 2002, their farming business paid David, as trustee of the Trust, for farming the property. Bruce testified that the farming business paid David, as trustee of the trust, and Eugene Sr. thereafter, for farming 11.61 acres of the SW SW Parcel and paid Freda for farming 6.5 acres located in the SW SW Parcel.

¶ 21 Brian testified that in 2002, his and Bruce's farming business paid the Trust to rent 16 acres of the SW SW Parcel, some of which may have included acreage in the SW SW SW Parcel because he did not know where the property line actually was. Brian testified that in 2002, the farming business paid Freda rent to farm her property located in the SW SW Parcel but that around 2005, Freda allowed them to farm the property without cash rent in order to maintain the property, which included roofing and plumbing work on the house located on the property. In 2009, Bruce and Brian purchased the SW SW SW Parcel and the 5-acre Parcel from Freda for $15,000 and paid property taxes thereafter. Brian testified that they thereafter sold the property to the plaintiffs for $20,000 or $30,000.

¶ 22 Brian testified that he understood that Freda's interest in the property was supposed to have included the house but that she had received a corner of the property that did not include the house. Brian testified that Freda then went to Eugene Sr. to acquire the house and some additional acreage, and this acquisition was controversial because the additional acreage should not have been part of the house acreage.

¶ 23 David testified that when he became the successor trustee for the Trust in 2001, Eugene Sr. was not incompetent. David testified, however, that Eugene Sr.'s eyesight and hearing were failing and progressively worsened until his death in 2003. David testified that he became the trustee of the Trust in January 2001 but that pursuant to their financial advisor's advice, on June 9, 2001, Eugene Sr. executed a resignation of trustee document that named David as the successor trustee. David testified that in October 2001, he explained clearly to Freda that he was the trustee of the Trust and that he needed to execute any financial instruments regarding the Trust because he had power of attorney and was trustee. David identified a September 2003 letter wherein he noted that Freda, Bruce, and Brian knew that he had been granted power of attorney

and trustee of the Trust. David testified that he had also discussed with Bruce problems with Eugene Sr.'s purported transfers to Freda.

¶ 24    David testified that Bruce and Brian farmed the same 40 acres in the SW SW Parcel prior to and after the execution of the Trust in 2000. David testified that as trustee, he entered a lease between the Trust and Bruce and Brian to farm 16 acres of the SW SW Parcel. David testified that he believed he had been paying taxes on all 40 acres of the SW SW Parcel, including the property at issue here.

¶ 25    On January 4, 2019, the circuit court entered its order finding as credible and uncontradicted David's testimony that he had advised Freda in October 2001 that he was the trustee and had requested that she cease efforts to acquire real estate from Eugene Sr. The court further found that the "deed dated June 17, 2002, was executed by an elderly, unhealthy person in a nursing home who lacked legal capacity to act as trustee[,] and was not supported by consideration[,] to a grantee who had full knowledge of the lack of legal capacity." The circuit court held that all of the transfers by Eugene Sr. after his resignation as trustee in June 2001 were void *ab initio*. The court held that the quitclaim deed from Freda to Eugene Sr. must also fail because it was not supported by valid consideration. Thus, the court concluded that when Eugene Sr. died, he was the beneficiary of a Trust owning a three-quarter interest in the SW SW Parcel and Freda owned a one-quarter interest in the SW SW Parcel.

¶ 26    The circuit court concluded that the "full power" language in the Deed in Trust, indicating that the trustee was duly authorized and empowered to execute the deed, gave rise to a cause of action by Freda to recover any consideration she may have paid to Eugene Sr. but could not transfer title to property not held in the Trust. The circuit court also rejected the plaintiffs' argument that Eugene Sr. acted with apparent authority in transferring the SW SW SW Parcel

10

and the 5-acre Parcel to Freda, noting that it was likely that Freda "prepared all the deeds and had her invalid brother sign the documents without legal or mental capacity." The circuit court further rejected the plaintiffs' argument that the Trust gave Eugene Sr. the authority to act as trustee because as sole beneficiary, he had authority to dispose of the Trust's property. The court concluded that because David had advised Freda of the succession of trustee, she could not have reasonably accepted the conveyances.

¶ 27    The circuit court found that both Bruce and Brian were aware that Freda did not have sole ownership of the SW SW SW Parcel and the 5-acre Parcel, a fact supported by David's testimony and by documents in the record. The circuit court further concluded that upon Eugene Sr.'s death, David, acting as trustee of the Trust, executed a warranty deed to Eugene Jr., and this deed transferred a three-quarter interest in the SW SW Parcel.

¶ 28    The circuit court concluded that the requisite seven-year period for adverse possession based on color of title and payment of taxes (735 ILCS 5/13-109 (West 2018)) had not been satisfied. The circuit court held that Freda was obligated to pay taxes and receive rents as a cotenant of the SW SW Parcel, that Freda lacked good faith in accepting the deeds alleged as color of title, and that because Bruce and Brian were aware of the dispute between Eugene Jr. and Freda over ownership of the SW SW Parcel, their claim of adverse possession based on payment of taxes was also not in good faith. The circuit court thus concluded that the deeds executed by Eugene Sr. to Freda were void *ab initio* and that the plaintiffs' adverse possession claim fails. The circuit court further concluded that it lacked jurisdiction over the necessary parties, namely Freda, and declined to quiet title in either party. The circuit court thereby denied the relief requested in counts I and III of the plaintiffs' second-amended complaint and denied the relief requested by the Rodely-defendants in their counterclaim.

11

¶ 29    On March 12, 2019, the circuit court denied two motions to reconsider filed by the plaintiffs. On April 3, 2019, the plaintiffs filed a timely notice of appeal.

¶ 30                                    ANALYSIS

¶ 31    On appeal, the plaintiffs argue that the plain language of the Deed in Trust executed in 2000 provided conclusive evidence that Eugene Sr. was trustee of the Trust despite his subsequent resignation, that Eugene Sr.'s resignation was inconsistent with the procedures required in the Trust, and that even if Eugene Sr. had resigned as trustee in June 2001, he had the authority to reappoint himself as trustee and convey the property as trustee to Freda.

¶ 32    The plaintiffs' second-amended complaint and the Rodely-defendants' counterclaim both allege actions to quiet title in the property in question. "A quiet title action is an equitable proceeding in which a party seeks to remove a cloud on title to a property." *Alward v. Jacob Holding of Ontario L.L.C.*, 2019 IL App (5th) 180332, ¶ 15. " 'A cloud on title is the semblance of title, either legal or equitable, appearing in some legal form but which is, in fact, unfounded or which it would be inequitable to enforce.' " *Id.* (quoting *Gambino v. Boulevard Mortgage Corp.*, 398 Ill. App. 3d 21, 52 (2009)). "A plaintiff in a quiet title action cannot claim a cloud on his title unless he actually holds title to the property." *Id.* " 'It is a fundamental requirement in an action to quiet title or in an action to remove a cloud from a title that the plaintiff must recover on the strength of his own title, although it is not required that a perfect title be established.' " *Lakeview Trust & Savings Bank v. Estrada*, 134 Ill. App. 3d 792, 812 (1985) (quoting *Reynolds v. Burns*, 20 Ill. 2d 179, 193 (1960)). "Various forms of documents which appeared valid on their face have been held to constitute clouds upon title." *Id.*

Eugene Sr.'s Authority to Transfer Property

¶ 34    On appeal, the plaintiffs argue that Eugene Sr.'s resignation did not conform with the requirements of the Trust document, and that therefore, the trustee's deeds executed by Eugene Sr. were conclusive evidence of his actual authority as trustee to convey the property to Freda, according to the "full power" language of the Deed in Trust executed in 2000. The plaintiffs therefore argue that on the face of the recorded documents, they have good title in the SW SW SW Parcel and the 5-acre Parcel.

¶ 35    The circuit court held that the effect of the "full power" language of the Deed in Trust would give rise to a cause of action by Freda against Eugene Sr. to recover any consideration she had paid, but that because Eugene Sr. was not trustee when he executed the trustee's deeds to transfer ownership to Freda, he could not transfer title to any property held in the Trust. The circuit court concluded that because David was the trustee after June 9, 2001, the trustee's deeds executed by Eugene Sr. to Freda for the SW SW SW Parcel and the 5-acre Parcel were void conveyances.

¶ 36    Initially, we note that even if Eugene Sr. had been trustee at the time of the transfers at issue, he could have conveyed to Freda no more than the Trust owned. *Moore v. Gariglietti*, 228 Ill. 143, 148 (1907) (plaintiff in error only owned a two-fifths interest, and therefore, could only convey amount she owned). Freda either owned or had transferred her one-quarter interest in the SW SW Parcel, except the SW SW SW Parcel, to Eugene Sr., individually, not to the Trust. Thus, Eugene Sr., as trustee of the Trust, could not convey to Freda a fee simple absolute in the SW SW SW Parcel and the 5-acre Parcel because the Trust did not own one. See *Drayson v. Wolff*, 277 Ill. App. 3d 975, 981 (1996). We recognize, however, that the circuit court held that as a result of void conveyances, Freda retained her one-quarter interest in the SW SW Parcel;

13

thus, if Eugene Sr. had retained authority as trustee of the Trust, he could have conveyed the Trust's three-quarter interest in the SW SW Parcel, or the portions at issue herein, by trustee's deed.

¶ 37    The Deed in Trust, transferring the SW SW Parcel into the Trust, provided that every deed executed by the trustee shall be conclusive evidence in favor of every person relying under such conveyance that the conveyance was executed in accordance with the Trust and that the trustee was duly authorized and empowered to execute such deed. However, we agree with the circuit court's conclusions, based on the evidence, that even if Eugene Sr. did not convey the property to the successor trustee, the successor trustee did not sign the original of the Trust, and only one physician's opinion was submitted with regard to Eugene Sr.'s incompetence, Eugene Sr. had resigned as trustee of the Trust before he purportedly transferred the properties to Freda and that Freda knew Eugene Sr. was no longer trustee of the Trust. Thus, Freda knew Eugene Sr. was not the trustee duly authorized and empowered to execute the deeds. Freda knew that David was the trustee duly authorized and empowered to execute deeds, and "only the trustee may deal with or convey title." *Alward*, 2019 IL App (5th) 180332, ¶ 18. Persons dealing with a trust property must strictly observe the trust features. *Id.* "A beneficiary cannot transfer legal title to property held in trust because the beneficiary does not hold that interest; only the trustee holds that interest. See Restatement (Third) of Trusts, pt. 4, ch. 11, intro. note (2003); Restatement (Third) of Trusts § 51 cmt. b (2003)." *Campbell v. Campbell*, 2017 IL App (3d) 160619, ¶ 20.

¶ 38    The plaintiffs alternatively argue that Eugene Sr. had the authority to convey the real estate from the Trust to Freda, even if he had previously resigned as trustee, because the Trust granted Eugene Sr. the power to convey property in and out of the Trust as settlor and beneficiary. The plaintiffs note that the language of the Trust reserved Eugene Sr.'s right as

14

settlor to dispose of trust assets, to direct an acting trustee to transfer property out of the Trust, and to withdraw principal.

¶ 39    Again, however, a beneficiary of a trust may not transfer trust property as if the trust did not exist. See *id.* ¶ 18 (when legal title to property is held by a person in his capacity as trustee of a trust, to transfer that legal title to another person or entity, the trustee must execute the transferring document in his capacity as the trustee of the trust and not in his individual capacity). "[A] person who receives the benefits of the trust format (having property held in trust) should be required to observe that format in his or her dealings with the trust property." *Id.* A trustee must transfer legal title to another person in his capacity as trustee. *Id.*

¶ 40    The plaintiffs also note that the Trust language allows third parties to rely on statements of a trustee as to the authority to act. For example, article seven, paragraph C of the Trust provides that "[a]ny person or corporation dealing with any Successor or substitute Trustee shall rely on the statement of any Successor or substitute Trustee that he or it is the acting Trustee of this Trust and no further evidence of authority shall be required." Thus, the plaintiffs' request that we conclude that the Trust, through its language, gave apparent authority to Eugene Sr., even though he had resigned as trustee, to transfer in fee simple property that the Trust did own, to a recipient who knew Eugene Sr. was no longer trustee of the Trust. We decline to so hold.

¶ 41    Instead, the evidence supported the circuit court's conclusion that Freda was aware that Eugene Sr. was no longer the trustee of the Trust prior to his purported conveyances as trustee to her. The evidence thus supported the circuit court's conclusion that in seeking trustees' deeds from Eugene Sr., whose eyesight, hearing, and physical condition were failing him in the nursing home, Freda, with knowledge that he was no longer trustee, lacked a good-faith belief that Eugene Sr. possessed the authority to convey property as trustee of the Trust. See generally

15

*Gambino*, 398 Ill. App. 3d at 52 (to prove existence of apparent authority, where principal creates reasonable impression in third party that agent is authorized to perform a certain act on its behalf, third party, based upon his knowledge of the facts, must possess a good-faith belief that the agent possessed such authority); *Northern Trust Co. v. St. Francis Hospital*, 168 Ill. App. 3d 270, 278 (1988) (to prove "apparent authority" or "authority by estoppel," one must establish the third person's knowledge of the facts and good-faith belief that the agent possessed such authority). We further agree with the circuit court's conclusion that based on her knowledge, Freda did not rely on Eugene Sr.'s apparent authority as trustee of the Trust to properly transfer the property at issue. See *Amcore Bank, N.A. v. Hahnaman-Albrecht, Inc.*, 326 Ill. App. 3d 126, 137-38 (2001) (to prove apparent authority, proponent must show that the third person detrimentally relied on agent's apparent authority). We reject the plaintiffs' claim to quiet title in the SW SW SW Parcel and the 5-acre Parcel based on the trustee deeds executed by Eugene Sr. in October 2001 and June 2002.

¶ 42           Adverse Possession Based on Color of Title and Payment of Taxes

¶ 43    The plaintiffs alternatively argue that they and their predecessors-in-title established ownership of the property through adverse possession based on payment of taxes with color of title, pursuant to section 13-109 of the Code (735 ILCS 5/13-109 (West 2018)).

¶ 44    Adverse possession determinations are evaluated under the manifest-weight standard. *Hoch v. Boehme*, 2013 IL App (2d) 120664, ¶ 39. "A judgment is against the manifest weight of the evidence only when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on the evidence." *Lawlor v. North American Corp. of Illinois*, 2012 IL 112530, ¶ 70.

¶ 45    Section 13-109 of the Code provides:

16

"Payment of taxes with color of title. Except as provided in Section 13-109.1, every person in the actual possession of lands or tenements, under claim and color of title, made in good faith, and who for 7 successive years continues in such possession, and also, during such time, pays all taxes legally assessed on such lands or tenements, shall be held and adjudged to be the legal owner of such lands or tenements, to the extent and according to the purport of his or her paper title. All persons holding under such possession, by purchase, legacy or descent, before such 7 years have expired, and who continue such possession, and continue to pay the taxes as above set forth so as to complete the possession and payment of taxes for the term above set forth, are entitled to the benefit of this Section." 735 ILCS 5/13-109 (West 2018).

"To establish adverse possession against a tenant in common the evidence must be stronger *** than is necessary to prove ordinary adverse possession by strangers." *Dunlavy v. Lowrie*, 372 Ill. 622, 631 (1939).

¶ 46　　Accordingly, to prevail under section 13-109, a litigant must prove (1) claim and color of title, made in good faith; (2) payment of taxes for seven successive years; and (3) continuous, uninterrupted, hostile possession adverse to the opponent for the statutory period. *Harlan v. Douthit*, 379 Ill. 15, 21 (1942); see also *Malone v. Smith*, 355 Ill. App. 3d 812, 816 (2005). " 'It is likewise settled that these three conditions must concur before the statute begins to run, and seven full years must have intervened between the day when the first payment of taxes was made and the day of the commencement of the litigation.' " *Malone*, 355 Ill. App. 3d at 816 (quoting *Harlan*, 379 Ill. at 21).

¶ 47　　"As to the element of good faith, there is good faith where there is no fraud and the color of title is not acquired in bad faith." *Simpson v. Manson*, 345 Ill. 543, 553 (1931). Although good

17

faith in the acquirement of title, within the meaning of the statute, does not require ignorance of adverse claims or defects in the title, there is a lack of good faith when the evidence reveals an intent to deceive, mislead, or defraud (*id.*) or the recipient of title had actual knowledge that the conveyer of title lacked authority to transfer the title (*Hardin v. Gouveneur*, 69 Ill. 140 (1873) (a party receiving color of title, knowing it to be worthless, or in fraud of the owner's rights, although he holds the color and asserts the claim, cannot render it availing because of the lack of good faith)).

¶ 48 "The words 'good faith' must receive a practical, commonsense construction; thus, a purchaser who buys and pays his money for land under the belief he is acquiring title, acquires title in good faith. *Winters v. Haines*, 84 Ill. 585, 588 (1877); see also *Bergesen v. Clauss*, 15 Ill. 2d 337, 343 *** (1958) (good faith 'depends upon the purpose with which the deed is obtained, and the reliance placed upon the claim and the color. A party receiving color of title, knowing it to be worthless, or in fraud of the owner's rights, although he holds the color and asserts the claim, can not render it availing, because of the want of good faith')." *Dotson v. Former Shareholders of Abraham Lincoln Land & Cattle Co.*, 332 Ill. App. 3d 846, 855-56 (2002). Good faith can be defined negatively as the absence of an intent to defraud the holder of better title or as the absence of bad faith. *Id.*

¶ 49 Here, the evidence supported the circuit court's conclusion that Freda did not have a *bona fide* belief that she was acquiring title to the property at issue because she was aware that Eugene Sr. had resigned as trustee. With actual knowledge that Eugene Sr. lacked authority to transfer the title, Freda lacked good faith in acquiring color of title.

¶ 50 The plaintiffs alternatively argue that they have established the elements of adverse possession, separate from Freda's claim. The plaintiffs argue that Bruce and Brian's payment of

taxes in 2010, 2011, and 2012, tacked to their payment of taxes from 2013 through 2017, amounts to a total of eight years of tax payments to support their adverse possession claim.

¶ 51    We decline to tack Bruce and Brian's years of possession to the plaintiffs because the evidence revealed that they also lacked a *bona fide* belief that they had acquired good title. Accordingly, they lacked the color of title acquired in good faith that is required for adverse possession. Thus, the record reveals that because the plaintiffs' first tax payment occurred in 2013 and they filed this proceeding in 2016, less than a full seven years after the first payment of taxes with color of title, their adverse possession claim fails.

¶ 52                    Failure to Join Necessary Party to Quiet Title

¶ 53    "An action for quiet title or to remove a cloud on title should join as parties all persons who may have a substantial interest therein and who will be materially affected by the decree." *Lakeview Trust & Savings Bank*, 134 Ill. App. 3d at 812-13. "A necessary party is one whose participation in the litigation is required for any of three reasons: (1) to protect an interest which the absent party has in the subject matter of the controversy which would be materially affected by a judgment entered in its absence; (2) to reach a decision which will protect the interests of those before the court; or (3) to enable the court to make a complete determination of the controversy." *Emalfarb v. Krater*, 266 Ill. App. 3d 243, 248 (1994). "It is well established that any party, or the court, *sua sponte*, may raise the issue of the absence of a necessary party at any time in the trial court or for the first time on appeal." *Id.* at 247. In the case at bar, the issue of whether Freda was a necessary party was not raised by the parties at trial but was decided by the circuit court in its judgment.

¶ 54    In the case *sub judice*, the issue framed by the pleadings involved whether the plaintiffs had acquired legal ownership of the SW SW SW Parcel and the 5-acre Parcel pursuant to their

19

predecessors' purported transfers or by adverse possession or whether the Rodely-defendants had acquired title to three-quarters interest in the entire SW SW Parcel pursuant to their predecessors' purported transfers. The proof was sufficient to show that the Rodely-defendants had title to three-quarters interest in the SW SW Parcel. Therefore, they were the legal owners of the SW SW Parcel to the extent and according to the purport of their deed. The evidence revealed that Freda, having purportedly transferred her interest in the SW SW Parcel, the SW SW SW Parcel, and the 5-acre Parcel, had no substantial interest in the litigation, and even if we were to hold otherwise, this case falls within the exception to the general rule, sometimes referred to as the "doctrine of representation," which provides that necessary parties need not be joined where a party before the court effectively represents their interest. *Klingel v. Kehrer*, 81 Ill. App. 3d 431, 440-41 (1980); see also *Moore v. McDaniel*, 48 Ill. App. 3d 152, 158 (1977).

¶ 55    The plaintiffs effectively represented anyone who sought interest in the SW SW SW Parcel and the 5-acre Parcel, which Freda purported to convey, pursuant to the trustee's deeds executed by Eugene Sr. during his lifetime. The plaintiffs desired a ruling that the SW SW SW Parcel and the 5-acre Parcel were properly titled in Freda, who properly transferred title to Bruce and Brian, who properly transferred title to the plaintiffs. The plaintiffs sufficiently represented their and Freda's interest to keep the SW SW SW Parcel and the 5-acre Parcel free of the Rodely-defendants' and Regions Bank's alleged cloud on their title. Under the circumstances of this case, we conclude that Freda was not a necessary party, and notwithstanding her absence, a judgment on the merits may stand as a binding judgment among the parties actually before the court. See *Emalfarb*, 266 Ill. App. 3d at 249.

¶ 56    Accordingly, we hold that the doctrine of representation was applicable, and judgment quieting title to three-quarters of the SW SW Parcel in the Rodely-defendants was proper. The

20

nonjoinder of Freda does not render judgment against the plaintiffs and in favor of the Rodely-defendants or Regions Bank void. See *McNeil v. Ketchens*, 2011 IL App (4th) 110253, ¶ 29; *Tomaso v. Plum Grove Bank*, 130 Ill. App. 3d 18, 27 (1985).

¶ 57                                                      *Laches*

¶ 58    The plaintiffs argue that the Rodely-defendants were guilty of *laches* for waiting 14 years to address their claim to quiet title in the property.

¶ 59    "*Laches* is an equitable doctrine that will bar relief when, because of a plaintiff's unreasonable delay in asserting a right, the defendant has been misled or prejudiced or has taken a course different from what he or she would have otherwise taken." *Department of Natural Resources v. Waide*, 2013 IL App (5th) 120340, ¶ 19. "The mere passage of time *** is not enough for *laches* to apply." *Id.* ¶ 20. The applicability of *laches* to a given case lies within the discretion of the circuit court. *Finley v. Finley*, 81 Ill. 2d 317, 330 (1980). A court of review will not disturb the decision of the lower court unless the determination is so clearly wrong as to constitute an abuse of discretion. *Waide*, 2013 IL App (5th) 120340, ¶ 19.

¶ 60    In this case, the plaintiffs have failed to meet their burden to establish the defense of *laches*. Both parties and their predecessors-in-title were aware of the ongoing dispute. The plaintiffs first placed ownership of the property in issue by initiating their quiet title action, and by filing their action, the plaintiffs had the burden of establishing their claim. The plaintiffs' theory of ownership rested upon the validity of the trustee deeds, or in the alternative, adverse possession. As noted above, the plaintiffs did not sustain their burden of proof and failed to establish their ownership of the property under either theory. Therefore, the plaintiffs cannot be said to be injured or prejudiced as a result of the Rodely-defendants' claim of ownership in their counterclaim. See *Payne v. Williams*, 91 Ill. App. 3d 336, 345-46 (1980) (*laches* did not serve as

21

bar to defendants' counterclaim in case where court held tax deeds were void as a matter of law, that possession by plaintiffs did not constitute adverse possession, and that any payment of taxes by them did not perfect in them title). Accordingly, we cannot conclude that the circuit court abused its discretion in declining to hold that the Rodely-defendants were guilty of *laches*.

¶ 61                                            Slander of Title

¶ 62    On appeal, the plaintiffs further argue that the circuit court erred in dismissing their slander of title action.

¶ 63    A motion to dismiss under section 2-619 of the Illinois Code of Civil Procedure admits the legal sufficiency of the complaint but asserts an affirmative matter outside the pleading that defeats the claim. *Goldberg v. Brooks*, 409 Ill. App. 3d 106, 110 (2011). Under section 2-619(a)(5) of the Code, dismissal of a claim is proper when "the action was not commenced within the time limited by law." 735 ILCS 5/2-619(a)(5) (West 2018). While a court will accept a plaintiff's well-pleaded facts for purposes of evaluating a section 2-619 motion, "conclusions of fact or law in the complaint which are not supported by specific factual allegations are not taken as true and are not considered by the court in ruling on the motion." *Mayfield v. ACME Barrel Co.*, 258 Ill. App. 3d 32, 34 (1994). Whether a cause of action was properly dismissed under section 2-619(a)(5) of the Code is a matter we review *de novo*. *Ferguson v. City of Chicago*, 213 Ill. 2d 94, 99 (2004). "Where a dismissal is proper as a matter of law, the circuit court may be affirmed on any basis supported by the record." *Taylor v. Frey*, 406 Ill. App. 3d 1112, 1115 (2011).

¶ 64    As stated previously, we hold that the plaintiffs do not have ownership rights in the real property at issue. "To quiet title or to sue for slander of title one must have title himself." *LaSalle National Bank v. Kissane*, 163 Ill. App. 3d 534, 540 (1987). "Until one has acquired legal title to

the real estate in question, he cannot complain of a cloud of title absent proof of title in himself." *Id.* Because the plaintiffs did not acquire legal title to the real estate in question, their slander of title action fails. Therefore, we affirm its dismissal by the circuit court.

¶ 65                                   Illinois Supreme Court Rule 63

¶ 66    The plaintiffs also argue that the circuit court judge violated Illinois Supreme Court Rule 63(C)(1) (eff. Feb. 2, 2017) for failing to disqualify himself in a proceeding in which his impartiality might reasonably be questioned because he had personal knowledge of disputed evidentiary facts concerning the proceeding.

¶ 67    Illinois Supreme Court Rule 63(C)(1) directs a judge to voluntarily recuse himself where his impartiality may reasonably be questioned, including when he "has a personal bias or prejudice concerning a party *** or personal knowledge of disputed evidentiary facts concerning the proceeding." Ill. S. Ct. R. 63(C)(1) (eff. Feb. 2, 2017). "Judges, of course, are presumed impartial, and the burden of overcoming the presumption by showing prejudicial trial conduct or personal bias rests on the party making the charge." *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 31. " 'Merely having a previous involvement with a defendant does not, *per se*, require disqualification.' " *People v. Storms*, 155 Ill. 2d 498, 503 (1993) (quoting *People v. Del Vecchio*, 129 Ill. 2d 265, 277 (1989)). "When reviewing a trial judge's recusal decision, we must determine whether the decision was an abuse of the judge's discretion." *Barth v. State Farm Fire & Casualty Co.*, 228 Ill. 2d 163, 175 (2008); *People v. Kliner*, 185 Ill. 2d 81, 169 (1998).

¶ 68    "Whether a judge should recuse himself is a decision in Illinois that rests exclusively within the determination of the individual judge, pursuant to the canons of judicial ethics found in the Judicial Code." (Emphasis omitted.) *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 45. "All judges in Illinois are expected to consider, *sua sponte*, whether recusal is warranted as a

23

matter of ethics under the Judicial Code." *Id.* "The Judicial Code, which is a part of our rules, says nothing that would give the impression that its provisions could be used by a party or his lawyer as a means to force a judge to recuse himself, once the judge does not do so on his own." *Id.* "This point is, in fact, reinforced by the Preamble to the Judicial Code: the Judicial Code is 'designed to provide guidance to judges *** and to provide a structure for regulating conduct through disciplinary agencies,' and its purpose 'would be subverted if the Code were invoked by lawyers for mere tactical advantage.' Code of Judicial Conduct, Preamble." *Id.*

¶ 69    At a hearing on September 26, 2017, the trial judge stated that Eugene Sr. was "a good friend of [his] when he was alive" and stated that Eugene Sr. was the county board chairman when the trial judge was the state's attorney. The trial judge also noted that "[a] lot of these people *** played football[,] [were] in the newspaper[,] and were a prominent family" who had an implement business for years. During trial, the trial judge stated, "I've told these lawyers this before, you know—you don't live in a vacuum. I'm familiar with this land and quail hunted on it and know where the home place is, and been by there a bunch of times, had a field trial there one time." Nevertheless, the judge stated that his familiarity would not affect his impartiality and further stated that he based his decision on the evidence offered or the lack of evidence offered, not whether he had quail hunted on the property 35 or 40 years ago or what Eugene Sr. may have told him when he was county commissioner.

¶ 70    Recusal is constitutionally mandated where the facts reveal that there exists a high probability of the risk of actual bias on the part of the challenged judge. See *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 48. Here, the facts reveal no probability of the risk of actual bias on the part of the trial judge. See *People v. Phinney*, 250 Ill. App. 3d 858 (1993) (trial judge did not have to recuse himself from hearing criminal trial of defendant whom judge had previously

24

prosecuted on unrelated charge in his capacity as assistant state's attorney, though conviction which judge obtained 10 years earlier in his capacity as prosecutor would be considered in aggravation at defendant's sentencing hearing; trial judge indicated that he did not believe his prior involvement with defendant would affect his impartiality, and defendant failed to provide any evidence to contrary). Accordingly, we cannot conclude that the trial judge abused his discretion by failing to recuse himself.

¶ 71   In sum, we hereby affirm the circuit court's order dismissing the plaintiffs' slander of title action and denying the plaintiffs' request to quiet title in the SW SW SW Parcel and the 5-acre Parcel in their favor based on chain of title or adverse possession. We modify the circuit court's judgment and quiet title to three-quarters interest in the SW SW Parcel in favor of the Rodely-defendants.

¶ 72                                    CONCLUSION

¶ 73   For the reasons stated, we affirm as modified the judgment of the circuit court.


¶ 74   Affirmed as modified.